IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:24-CV-6-D

KYLE ROBBINS,

        Plaintiff/Claimant,

v.

MARTIN O'MALLEY,
Commissioner of Social Security,

MEMORANDUM AND
RECOMMENDATION

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-11, -12]. Claimant Kyle Robbins ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. Claimant filed a reply, [DE-13], the time for further responsive briefing has expired, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, it is recommended that the final decision of the Commissioner be reversed and the matter be remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on January 29, 2021, alleging disability beginning January 10, 2020. (R. 17, 234–59). The claim was denied initially and upon reconsideration. (R. 78–141). A telephonic hearing before an Administrative Law Judge ("ALJ") was held on November 15, 2022, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 47–77). On June 20, 2023, the ALJ

issued a decision denying Claimant's request for benefits. (R. 14–37). On November 14, 2023, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into the written decision pertinent findings and conclusions based

3

on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant did not engage in substantial gainful activity from the alleged onset date of January 10, 2020. (R. 19). Next, the ALJ determined Claimant had the severe impairments of degenerative disc disease, gout, and depression, and the non-severe impairments of a cyst, substance abuse disorder, body dysmorphic disorder, mild degenerative joint disease of the elbow, radial shaft abnormality, and minimally displaced fracture of the distal radial metaphysis. (R. 19–20). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20–23). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 22–23).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with the following additional limitations:

> frequently stoop and crawl, frequent[ly] climb ladders, ropes or scaffolds; must avoid concentrated exposure to unprotected heights, moving machinery, and hazardous machinery; can understand, remember and carry out simple instructions; can occasionally interact with co-workers and supervisors; can occasionally interact with the general public; can use judgment to make simple work-related decisions; and can occasionally deal with changes in a routine work setting.

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

(R. 24–29). In making this assessment, the ALJ found Claimant's statements regarding the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 25). At step four, the ALJ concluded Claimant could not perform his past relevant work, which includes the jobs of bagger, cashier, insurance file clerk, and building materials sales attendant. (R. 29–30). However, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are other jobs that exist in significant numbers in the national economy that Claimant can perform. (R. 30–31).

## V. DISCUSSION

Claimant contends that the ALJ erred by failing to explain how she accounted for Claimant's moderate limitations in concentration, persistence, and pace when formulating the RFC and failing to resolve apparent conflicts between the VE's testimony and The Dictionary of Occupational Titles ("DOT"). Pl.'s Br. [DE-11] at 6–26. The Commissioner contends that the decision is supported by substantial evidence. Def.'s Br. [DE-12] at 5–17.

### 1. The RFC Assessment

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632,

5

636 (4th Cir. 2015) (quoting SSR 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

Here, the ALJ determined at step two that Claimant had the severe mental impairment of depression, as well as the non-severe mental impairments of substance abuse disorder and body dysmorphic disorder. (R. 19–20). In concluding that Claimant's mental impairments resulted in a moderate limitation in concentration, persistence, or pace, the ALJ noted the following:

> When asked about his concentration the claimant stated that his concentration was "a little off". Mental status examinations have indicated that the claimant's attention and concentration, memory and thought processes are not so significantly limited so that he would be unable to sustain attention and pace for simple, routine, unskilled work. He displayed adequate attention and concentration during medical encounters and at the consultative physical evaluation, though during the psychiatric admission concentration was distractible. The claimant testified that he read the Bible a lot and watched You Tube for Bible studies.

(R. 23). The ALJ assessed an RFC including a mental limitation to "understand[ing], remember[ing] and carry[ing] out simple instructions" and found that Claimant can occasionally deal with changes in a routine work setting. (R. 24).

Claimant argues, citing *Mascio v. Colvin*, that the ALJ's RFC assessment contains social interaction limitations that appear to account for Claimant's moderate deficits in interacting with others, but it is unclear how the RFC accounts for Claimant's moderate concentration, persistence, and pace limitations. Pl.'s Br. [DE-11] at 6–17. In *Mascio*, the Fourt Circuit held that an ALJ "does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question [posed to the VE] to simple, routine tasks or unskilled work.'" 780 F.3d at

6

638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The court explained that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court also indicated that there could be instances where a limitation in concentration, persistence, or pace does not affect the Claimant's ability to work and would be appropriately excluded from the RFC, but that in such circumstances an explanation from the ALJ is required. *Id.* ("For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would have been appropriate to exclude it . . . . But because the ALJ here gave no explanation, a remand is in order."). Thus, the question presented in the instant case is whether the ALJ appropriately explained why Claimant's moderate limitation in concentration, persistence, or pace does not affect his ability to work.

The Commissioner's first counterarguments rather confusingly refer to Claimant's so-called reliance on *Thomas v. Berryhill* instead of *Mascio*.[2] Def.'s Br. [DE-12] at 6–11. In addressing *Mascio*, the Commissioner emphasizes that the Fourth Circuit does not require every ALJ decision with findings of moderate limitations in concentration, persistence, or pace to include a detailed analysis of the claimant's ability to stay on task. *Id.* at 8. However, the Commissioner argues that despite this rule, the ALJ provided a thorough explanation as to why a limitation for staying on task was not included in the RFC by referencing Claimant's daily activities of reading the Bible frequently and engaging in Bible studies, as well as medical records addressing Claimant's mental health issues and the relevant medical opinion evidence. *Id.* at 9–11. According

---

[2] As these arguments are nonresponsive to those raised in Claimant's brief, this Recommendation does not consider them.

7

to the Commissioner, the evidence demonstrates that Claimant's ability to stay on task was not significantly impaired and he could carry out basic work activities. *Id.* at 11.

After reviewing the record, the undersigned agrees with Claimant that remand is warranted on this basis. The ALJ considered a variety of mental health-related evidence to assess Claimant's RFC, ultimately determining that, based on this evidence, Claimant's ability to concentrate, persist, and maintain pace was moderately limited. (R. 23). Based on this determination, the ALJ limited Claimant to work involving understanding, remembering, and carrying out simple instructions, as well as occasional changes in a routine work setting, *id.*, which address the ability to understand and perform a task, *see Smith v. Kijakazi*, No. 5:20-CV-584-M, 2022 WL 2443466, at *5 (E.D.N.C. May 11, 2022). However, as *Mascio* made clear, the ability to perform a task is distinct from the ability to stay on task, 780 F.3d at 638, and the ALJ's RFC imposed no limitation to address Claimant's ability to stay on task, (R. 24). The ALJ attempted to explain why such a limitation was not imposed, stating that the medical treatment and opinion evidence indicates that "the claimant's attention and concentration, memory and thought processes are not so significantly limited so that he would be unable to sustain attention and pace for simple, routine, unskilled work." (R. 23). In support, the ALJ noted Claimant's level of attention and concentration during medical encounters and examinations, as well as his daily activities of reading the Bible and watching Bible studies on YouTube. *Id.* Despite this explanation, though, the undersigned is unable to trace the ALJ's reasoning.

The evidence pertaining to Claimant's ability to concentrate, persist, and maintain pace is undeniably mixed. As the ALJ discussed in her RFC assessment, at the hearing, Claimant testified that he cannot work because of a combination of issues including depression, alcohol use disorder, and instability of the lower back. (R. 24, 47–77). Claimant described his memory as "okay" and

8

his concentration as "a little off," though he stated that he reads a lot of the Bible, "know[s] a lot of the word," and uses YouTube for Bible study. (R. 23–24, 64, 66). Claimant also explained that he had been off alcohol for fourteen months prior to the hearing. (R. 24, 63). In addition to Claimant's hearing testimony, the ALJ discussed treatment records from UNC and Holly Hill Hospital spanning from December 29, 2020 to January 5, 2021, a time period where Claimant was involuntarily committed for suicidal ideation then voluntarily hospitalized for treatment afterward. (R. 25–26, 743–805). The ALJ explained how at this time, Claimant reported chronic alcohol use and indicated that his longest period of abstinence was for three months earlier in the year, Claimant showed a very mild tremor and frustrated mood, and Claimant was distractible but able to fully attend to his treatment without fluctuations in consciousness and his memory was intact. (R. 25). The ALJ also discussed how, after transfer to Holly Hill, Claimant detoxified and tolerated the procedure well, and on discharge was duly oriented, with overall normal mental status in all critical areas of evaluation. (R. 26).

The ALJ next addressed Claimant's treatment history at Advance Community Health, and it is at this point that her reasoning becomes difficult to follow. In her report, the ALJ notes largely unremarkable mental status evaluations from March 31, 2021 onward, as well as Claimant's comment in November 2021 that he was not depressed and was trying to wean off his depression medication, Wellbutrin. (R. 26, 806–17, 857–946). Claimant's treatment records paint a vastly different picture, however. To begin with, on March 31, 2021, Claimant completed PHQ-9, PHQ-4, and GAD-7 questionnaires, which assess a patient's depression and generalized anxiety disorder symptoms. (R. 923–32, 936–38). While his physician noted that Claimant was not nervous or anxious at the time of the examination and his mood, affect, behavior and judgement were normal, Claimant scored a 3/4 on the PHQ-9's suicidal ideation range, as well as a 27/27 on the PHQ-9's

9

depressive symptoms scale and a 6 on the PHQ-4, all of which indicate moderate to severe symptoms. *Id.* Claimant also scored a 19/21 on the GAD-7 for generalized anxiety disorder symptoms, which is likewise severe. *Id.*

As the ALJ's decision implies, Claimant's mental health symptoms appeared to improve in November 2021. At his November 3 appointment, Claimant scored a 0 on the PHQ-9 and a 0 on the PHQ-2 and reported that he was not depressed or having suicidal thoughts and was trying to wean off Wellbutrin, and his physician noted on both November 3 and November 17, 2021 that he did not appear nervous or anxious. (R. 885–922). However, on January 10, 2022, contrary to the ALJ's statement that Claimant's "mental status was . . . unremarkable notwithstanding endorsement of nervousness/anxiety during the review of symptoms portion of the evaluation," (R. 26), Claimant scored a 6 on both the PHQ-2 and PHQ-4, both of which are indicative of moderate to severe depression, (R. 866–84).

The ALJ's decision addresses none of the above evidence, a fact made even more troubling by her discussion of the medical opinions rendered by Drs. Cyr-McMillon and Fulmer. Dr. Cyr-McMillon found that Claimant "retains the capacity to perform simple routine and repetitive tasks (SRRTs) at a pace that is not highly production oriented, in stable work assignment (no frequent changes in the clmt's assigned tasks and routines) with reduced social demands." (R. 82–83, 86–87, 95–96). The doctor also noted that the work "should not require conflict resolution or crisis management." (R. 86–87). Dr. Fulmer's opinion is substantively identical. (R. 106, 110, 118, 122). The ALJ found these findings "generally consistent with the overall mental status evaluations indicating some depression and mood abnormality and, at times, distractibility but not consistently significant mental status deficits for memory and concentration, thought process, cognitive ability, and maintaining attention/concentration." (R. 28). Additionally, she noted that the findings are

10

"generally consistent with social interaction and adaptation limitations with evidence of some abnormal moods and psychiatric admission in the context of substance use." *Id.* Based on these factors, the ALJ found the doctors' determinations "persuasive overall," but specifically noted that the mental RFC "does not precisely mirror [them]." *Id.*

Without reweighing the evidence, the ALJ's conclusion is troubling because both Drs. Cyr-McMillon and Fulmer specifically acknowledged Claimant's ability to work but stated that he should be confined to jobs that are performed at a pace that is not highly production oriented. (R. 82–83, 86–87, 95–96, 106, 110, 118, 122); *see Stith v. Berryhill*, No. 5:16-CV-689-D, 2017 WL 5896901, at *4 (E.D.N.C. Nov. 13, 2017) ("Cases addressing pace generally look to whether or not the ALJ has provided a production limitation in the RFC") (citing cases). The ALJ found both opinions persuasive and "generally consistent with the overall mental status evaluations," yet imposed no pace limitations in the RFC. (R. 24–29); *see Stith*, 2017 WL 5896901, at *4 (E.D.N.C. Nov. 13, 2017) ("the court has previously held that a limitation to performing simple tasks with few workplace changes addressed difficulties with concentration and persistence, but not pace") (citing *Weeks v. Colvin*, No. 5:14-CV-155-D, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015); *Guyton v. Colvin*, No. 7:15-CV-59-FL, 2016 WL 716515, at *3–4 (E.D.N.C. Feb. 5, 2016)). This result alone is confusing. However, the court's review is further complicated by the fact that the ALJ either outright failed to explain why she chose not to adopt the recommended pace limitations or, at best, attempted to do so by contradicting her own expressed view of the evidence and stating that, while Claimant's ability to concentrate, persist, and maintain pace is moderately limited, "[m]ental status examinations have indicated that the claimant's attention and concentration, memory and thought processes are not so significantly limited so that he would be unable to sustain attention and pace for simple, routine, unskilled work." (R. 23). In any event, the ALJ did not adopt

11

a limitation to address Claimant's moderate difficulty in maintaining the pace necessary to stay on task and it is not evident from the ALJ's decision why such a limitation would not be necessary. Thus, remand is required under *Mascio*. *See* 780 F.3d at 638.

### 2. The VE's Testimony and the DOT

The ALJ may utilize a VE at steps four and five "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). For a VE's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the record as found by the ALJ. *Id.*; *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (holding the ALJ's hypothetical question "adequately contemplated all of [claimant's] impairments and resulting limitations" as evidenced by the record).

In the instant case, Claimant contends that the ALJ erred in failing to resolve apparent conflicts between the VE's testimony and the DOT. Pl.'s Br. [DE-11] at 17–26. Specifically, Claimant argues that limitations imposed in the RFC conflict with the DOT's description of the jobs identified by the VE as jobs existing in substantial numbers in the national economy that Claimant can perform. Pl.'s Br. [DE-11] at 17–26. The Commissioner counters that no such conflict exists, as is evident from the environmental restrictions for these positions laid out in the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"). Def.'s Br. [DE-12] at 12–17.

Pursuant to SSR 00-4p, the ALJ must "inquire, on the record, . . . whether the vocational expert's testimony conflict[s] with the [DOT], and [the Ruling] also requires that the ALJ elicit a reasonable explanation for and resolve conflicts between the expert's testimony and the [DOT]."

12

*Pearson v. Colvin*, 810 F.3d 204, 207–08 (4th Cir. 2015) (internal quotation marks omitted) (citing S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). However, not "all possible conflicts must be identified and resolved," but rather only "apparent conflicts," i.e., "where the expert's testimony seems to, but does not necessarily, conflict with the [DOT]." *Id.* at 209. The ALJ must elicit from the VE "a reasonable explanation for the apparent conflict," S.S.R. 00-4p, at *4, and the ALJ has not fulfilled his duty to fully develop the record if it "contains an unresolved conflict between the expert's testimony and the [DOT]" or if the ALJ "ignores an apparent conflict because the expert testified that no conflict existed," *Pearson*, 810 F.3d at 210. "An expert's testimony that apparently conflicts with the [DOT] can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]." *Id.* at 209–10.

In assessing Claimant's RFC, the ALJ stated that he "must avoid concentrated exposure to unprotected heights, moving machinery, and hazardous machinery." (R. 24). At the hearing, the VE identified the occupations of meat clerk, warehouse worker, and laundry worker as jobs that exist in substantial numbers in the national economy that Claimant can perform, (R. 73–74), and the ALJ later adopted these recommendations in her decision, (R. 30–31). Claimant argues that the DOT's description of each position conflicts with the VE's testimony that Claimant can perform each job within the RFC limitations the ALJ assessed because each job, as described in the DOT, "appears to require concentrated exposure to machinery that moves and could reasonably be expected to be hazardous." Pl.'s Br. [DE-11] at 20–26; *see* DOT § 222.684-010 (Dept. of Labor 1977) (describing transport of meat from delivery truck to storage room on conveyor and with handtruck and use of meat grinder); DOT § 922.687-058 (Dept. of Labor 1977) (describing transport of materials using hand, handtruck, or electric handtruck, distribution of items to workers

13

on an assembly line, and transport of items using a vehicle); DOT § 361.685-018 (Dept. of Labor 1977) (describing tending laundering machines). The Commissioner disputes the existence of a conflict, citing the SCO's environmental restrictions for these positions, which state that moving mechanical parts are not present. Def.'s Br. [DE-12] at 12–17; *see* SCO as Defined in the Revised DOT Titles §§ 05.09-01 and 06.04.35.

The SCO is a supplement or companion to the DOT that lists certain requirements (i.e., specific vocational preparation, strength level and other physical demands, and environmental conditions) for specific DOT occupations. *See* S.S.R. 83-14, 1983 WL 31254, at * 1 (1983). The Fourth Circuit has treated the provisions of the SCO collectively with those of the DOT. *See, e.g., Pearson*, 810 F.3d at 205 n.1. In cases involving similar differences in language used to describe workplace conditions in the DOT, SCO, and RFC, some courts have adopted Claimant's view and found that a conflict exists where the DOT job description details the use of a machine, which may itself move, the SCO describes the position as not involving mechanical parts, and the RFC limits the claimant to work that does not involve moving or hazardous machinery. *See, e.g., Aho v. Comm'r of Soc. Sec. Admin.*, No. 10-40052-FDS, 2011 WL 3511518, at *12 (D. Mass. Aug. 10, 2011) ("The job of folding machine operator requires the worker to feed laundry onto a feeder conveyor belt and to remove jammed articles from the machine . . . . Because there is no indication that plaintiff has ultimate control over this machine's movements, it may fall within the category of 'dangerous moving machinery.'"). However, nearly all the Fourth Circuit courts that have considered the issue have held the opposite: that there is no conflict where the SCO and/or DOT job description indicates that there are no moving mechanical parts for the job identified, and thus, the ALJ's failure to ask the VE if her testimony conflicted with the DOT does not rise to reversible error. *See, e.g., Jarrett v. Saul*, No. 2:20-CV-00679, 2021 WL 5238212, at *9 (S.D.W. Va. June 10,

14

2021); *Ilioff v. Saul*, No. 1:19CV1226, 2021 WL 848204, at *8 (M.D.N.C. Mar. 5, 2021) ("Contrary to Plaintiff's contentions . . . no apparent conflict existed between the VE's testimony that an individual precluded from 'concentrated exposure to . . . moving machinery' could perform the job of Bakery Line Worker [ ] and the DOT's listing for the 'Bakery Worker, Conveyer Line' job reflecting exposure to '[m]oving [m]ech[anical [p]arts [o]ccasionally'") (cleaned up); *Hughes v. Saul*, No. 1:20CV547, 2021 WL 2186447, at *14 (M.D.N.C. May 28, 2021) ("[T]he DOT flatly contradicts Plaintiff's unsupported argument that the jobs cited by the VE and adopted by the ALJ at step five require the use of moving machinery or equipment . . . each job listing in the DOT reflects the following entry: 'Moving Mech. Parts: Not Present – Activity or condition does not exist.'") (cleaned up); *Trout v. Kijakazi*, No. 0:20-4286-PJG, 2022 WL 538213, at *3 (D.S.C. Feb. 23, 2022); *James B. v. O'Malley*, No. 1:22CV1103, 2024 WL 920722 at *6 (M.D.N.C. Mar. 4, 2024) ("[A]lthough Plaintiff contends that there appears to be a conflict between the RFC limitations that limit his exposure to moving machinery and the DOT . . . the DOT descriptions for the positions of Order Taker and Linen Worker specifically provide that they do not involve moving mechanical parts of equipment, tools, or machinery, and state specifically that this condition is "Not Present – Activity or condition does not exist."); *Gibson v. Kijakazi*, No. 2:20-cv-00559, 2021 WL 5277132, at *3 (S.D.W. Va. Nov. 12, 2021) (noting that, while "common sense would seem to dictate that the toy stuffer position requires exposure to moving mechanical parts . . . the DOT description simply does not require that conclusion") (cleaned up); *Carter v. Kijakazi*, No.: 3:20-cv-00672, 2021 WL 4931724, at *6 (S.D.W. Va. Sept. 30, 2021) ("The position does not involve hazards such as moving machinery. [Citing the DOT] (stating 'Moving Mech. Parts: Not Present - Activity or condition does not exist'). Therefore, Claimant fails to show that there was any potential conflict regarding the RFC limitation to no moving machinery and the sorter

15

position."). *But see Rios v. Colvin*, No. 1:13-cv-1458, 2015 WL 1258908, at *14 (E.D. Va. Mar. 18, 2015) (finding a conflict where the DOT "indicate[d] that the person performing the job would be working in close proximity to a conveyor belt or other moving machinery"). Given the weight of precedent, it is recommended that the court adopt the majority approach here and find that there was no apparent conflict between the VE's testimony and the DOT and, therefore, no grounds for remand exist on this basis.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that the final decision of the Commissioner be reversed and the matter be remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **November 13, 2024** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and**

Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this the 30 day of October, 2024.

Robert B. Jones, Jr.
United States Magistrate Judge